STATE OF NEW JERSEY, PLAINTIFF-APPELLANT, v. JOHN MOFFA, DEFENDANT-RESPONDENT.

Argued October 9, 1961—Decided December 5, 1961.

*Mr. Norman Heine,* Camden County Prosecutor, argued the cause for appellant (*Mr. Stephen M. Gretzkowski, Jr.,* Assistant Prosecutor, on the brief).

*Mr. Joseph Tomaselli* argued the cause for respondent (*Messrs. Malandra & Tomaselli,* attorneys).

The opinion of the court was delivered by

WEINTRAUB, C. J. Defendant Moffa was indicted for suborning Butler Blevins to testify falsely before a Camden County grand jury in violation of *N. J. S.* 2A:85–14 (aiding and abetting) and *N. J. S.* 2A:131–4 (false swearing). The indictment quotes the portion of the testimony of Blevins alleged to be false. Moffa sought pretrial inspection of (1) the balance of Blevins' testimony and (2) statements given by Blevins to the prosecutor. The trial court granted the first request and denied the second. 64 *N. J. Super.* 69 (*Cty. Ct.* 1960). The State obtained leave to appeal and we certified the case while it was pending before the Appellate Division.

*R. R.* 3:5–11 provides:

"Upon motion of a defendant made at any time after the filing of the indictment or accusation, the court shall order the prosecutor

to permit the defendant to inspect and copy or photograph designated books, tangible objects, papers or documents other than written statements or confessions made by the defendant obtained from or belonging to the defendant and may, if the interests of justice so require, order the prosecutor to permit the defendant to inspect and copy or photograph written statements or confessions made by the defendant and designated books, tangible objects, papers or documents obtained from others except written statements or confessions."

In *State v. Johnson,* 28 *N. J.* 133 (1958), we held this rule bars pretrial inspection of statements obtained by the prosecution from a witness. The State contends the grand jury testimony of Blevins is a statement of a witness within the rule. We cannot agree. The testimony of Blevins contains his alleged criminal act, and what Moffa seeks is, figuratively, a view of the scene of the crime.

To maintain its case against Moffa, the State must prove not only that he asked Blevins to swear falsely but also that Blevins did in fact do so. That the commission of the crime by the person suborned must be shown was assumed without discussion in *State v. Taylor,* 5 *N. J.* 474 (1950); *State v. Caporale,* 16 *N. J.* 373 (1954), and *State v. Scott,* 12 *N. J. Misc.* 278 (*Sup. Ct.* 1934), and is supported by uniform authority elsewhere. 3 *Wharton, Criminal Law and Procedure (Anderson* 1957), § 1321, at *pp.* 687–88; 41 *Am. Jur., Perjury,* § 74, at *p.* 41 (1942); 70 *C. J. S. Perjury* § 79, at *p.* 549 (1951).

Thus Moffa stands in the shoes of Blevins with respect to so much of the indictment as alleges that Blevins swore falsely. If Blevins were the defendant, his right to pretrial inspection of his testimony would be clear. In *Johnson* we held a defendant should have pretrial inspection of his confession if he needs it to prepare for trial, unless the State shows such disclosure will hamper the prosecution. There is even more reason to grant an accused access to the testimony in which he allegedly committed a crime, to the end that his counsel may see whether the criminal event did occur in the light of everything he said. So one charged with perjury before a grand jury

has been granted pretrial inspection of his testimony. *United States v. Rose,* 215 *F.* 2d 617, 629 (3 *Cir.* 1954); *United States v. Remington,* 191 *F.* 2d 246, 250 (2 *Cir.* 1951), *certiorari* denied 343 *U. S.* 907, 72 *S. Ct.* 580, 96 *L. Ed.* 1325 (1952); *United States v. White,* 104 *F. Supp.* 120 (*D. N. J.* 1952). Still more evident is the need of the alleged suborner since of course he was not present when that offense was allegedly committed. He can hardly know what factual or legal issues an inspection may reveal until he has had it.

A defendant cannot be confined to so much of the scene as the State believes to be relevant. And if there is no outweighing cause, he should have the view before trial, the better to prepare for that event. *State v. Murphy,* 36 *N. J.* 172, 175 *A.* 2d 622 (1961). In *State v. Winne,* 27 *N. J. Super.* 120, 123 (*Cty. Ct.* 1953), affirmed 27 *N. J. Super.* 304, 309 (*App. Div.* 1953), a former prosecutor, charged with nonfeasance, was permitted to examine the files of his former office. In *State v. Bunk,* 63 *A.* 2d 842 (*N. J. Cty. Ct.* 1949), pretrial inspection was ordered of the weapons and the fatal bullets, as well as of institutional records of mental examinations of a defendant made prior to the crime. So also we held it within the inherent power of a court to order a pretrial psychiatric examination of a pivotal witness for the State where there was reason to question his capacity. *State v. Butler,* 27 *N. J.* 560, 600–01 (1958).

Here there is ample reason for pretrial inspection and none to deny it. The State stresses the policy in favor of the secrecy of grand jury proceedings. *R. R.* 3:3–7. If this policy barred disclosure before trial, it would bar it as well at the trial itself. Nothing suggests the invasion would be less at one time than at the other. Hence the question is whether the policy in favor of secrecy outweighs the demand that guilt be adjudged upon the whole truth.

If a policy issue was involved, it was resolved when the prosecution was started. The State thereby lifted the veil.

It may not limit the trial to a glimpse of what happened; everything relevant must be revealed.

██ It has long been our rule that proceedings before a grand jury may be disclosed if justice so requires. Thus a witness may be queried as to whether his present testimony accords with his testimony before the grand jury. *State v. Bovino,* 89 *N. J. L.* 586, 588 (*E. & A.* 1916); *State v. Silverman,* 100 *N. J. L.* 249, 252 (*Sup. Ct.* 1924); *State v. Goldman,* 14 *N. J. Misc.* 463, 465 (*Sup. Ct.* 1936). In *State v. Samurine,* 47 *N. J. Super.* 172, 178 (*App. Div.* 1957), reversed on other grounds, 27 *N. J.* 322 (1958), it was stated the defense is entitled at trial to have the grand jury testimony of witnesses, for the purpose of cross-examination. We so held where it appeared the witnesses had examined their testimony before taking the stand. *State v. Mucci,* 25 *N. J.* 423 (1957). We ordered full exploration of grand jury minutes when a presentment reprobated a public official. *In re Presentment by Camden County Grand Jury,* 34 *N. J.* 378, 401 (1961); *R. R.* 3:3–9(c). See also *State v. Donovan,* 129 *N. J. L.* 478 (*Sup. Ct.* 1943). The situation before us fits easily within the doctrine of those decisions.

We are referred to *Pittsburgh Plate Glass Co. v. United States,* 360 *U. S.* 395, 79 *S. Ct.* 1237, 3 *L. Ed. 2d* 1323 (1959). That case involved a call at trial for the grand jury testimony of government witnesses for use on cross-examination. All members of the court agreed that in principle the testimony could be had, but divided 5 to 4 upon whether the required showing was there made. The majority failed to find a "particularized need," while the dissenters thought it was evident. Our decision in *Mucci* accords with the theme of the dissenting view. But, as to the present case, it cannot be said the majority opinion in *Pittsburgh Plate Glass* supports the State. Here the State itself broke the seal when it charged false swearing before the grand jury. As to this situation, the dissenting opinion in *Pittsburgh Plate Glass* cited with approval

*United States v. Rose, supra* (215 *F. 2d* 617), and *United States v. Remington, supra* (191 *F. 2d* 246), in which defendants charged with perjury before a grand jury were granted pretrial inspection of their testimony. The majority opinion made no reference to those decisions, probably for the reason that they are compatible with its thesis. If the prosecution uses part of the grand jury testimony of a witness, the "particularized need" of the defendant to see if anything else bears upon what is used would seem clear enough.

It is suggested that to reveal all of the testimony of Blevins would enable defendant to "tamper" with him and that the policy of secrecy with respect to grand jury proceedings was designed to guard against that possibility. Actually there is no special connection between the subjects; the possibility of tampering is the same whether the witness made his statement before a grand jury or elsewhere.

If by "tamper" one means "intimidate" or worse, the answer is that Blevins' identity has already been revealed. If "tamper" means that defendant might induce Blevins to change the portion of his testimony charged in the indictment to be false, that much of his testimony has already been disclosed in the indictment. Finally, if it is meant that Blevins might be persuaded falsely to explain away something in the balance of his testimony, that possibility is too conjectural to outweigh the need for a fair opportunity to investigate whether the criminal event did occur in fact and in law. This objection is much the one we held insufficient in *Johnson* when advanced to defeat pretrial inspection by a defendant of his own statement. Indeed, in that context, the possibility was greater since of course it would be easier for a defendant to "tamper," in the sense just stated, with his own testimony than to enlist the connivance of another. We should not bar a pretrial investigation of the criminal event itself because of a

speculative fear that the fact-finding process will be overwhelmed by criminal activity.

We add the State does not assert that Blevins' testimony included matters unrelated to the alleged false swearing. If his testimony did, the court of course could exscind upon the State's request whatever is clearly irrelevant to the offense charged.

We see no misuse of the trial court's discretion. The order is affirmed.

PROCTOR, J. (dissenting). I dissent. The majority has cited no case holding that a defendant is entitled to pretrial disclosure of testimony given by another before a grand jury. Certainly there is no such precedent in this State. Grand jury proceedings are traditionally secret. See *United States v. Procter & Gamble Co.*, 356 *U. S.* 677, 78 *S. Ct.* 783, 2 *L. Ed.* 2d 1077 (1958). In *United States v. Rose*, 215 *F.* 2d 617 (3 *Cir.* 1954), cited approvingly in the majority opinion, the reasons for this rule of secrecy are summarized at *pages* 628–629:

"(1) To prevent the escape of those whose indictment may be contemplated; (2) to insure the utmost freedom to the grand jury in its deliberations, and to prevent persons subject to indictment or their friends from importuning the grand jurors; (3) *to prevent subornation of perjury or tampering with the witnesses who may testify before grand jury and later appear at the trial of those indicted by it;* (4) to encourage free and untrammeled disclosures by persons who have information with respect to the commission of crimes; (5) to protect innocent accused who is exonerated from disclosure of the fact that he has been under investigation, and from the expense of standing trial where there was no probability of guilt." (Emphasis added)

The defendant is accused of suborning Blevins to testify falsely before the grand jury. It is likely that Blevins will be a witness for the State at the trial. In such a situation, there is particular cogency in the reason for secrecy, *i. e.,* "to prevent subornation of perjury or tampering with the witnesses who may testify before grand jury

and later appear at the trial of those indicted by it." It seems to me the majority has ignored this reason in finding "no misuse of the trial court's discretion" in allowing pretrial inspection of Blevins' grand jury testimony. Moreover, the trial court's exercise of discretion was based on a faulty premise. It said, "The impeachment of the State's principal witness on the basis of prior inconsistent or contradictory statements made under oath before a Grand Jury would have important effect on a trial. Before such a fact can be established defendant would need access to the testimony." Of course, if defendant at the trial shows a "particularized need" for the testimony, he should have it. *Cf. Pittsburgh Plate Glass Co. v. United States,* 360 *U. S.* 393, 79 *S. Ct.* 1237, 3 *L. Ed. 2d* 1323 (1959). And the trial should be adjourned to give him adequate time to properly examine it. See *United States v. Spangelet,* 258 *F. 2d* 338 (2 *Cir.* 1958). In such event, none of the reasons for secrecy set forth in *Rose* would apply. But to allow defendant examination of a witness's grand jury testimony long before trial would flout the sound policy of keeping such testimony secret. See *State v. Borg,* 8 *N. J. Misc.* 349 (*Sup. Ct.* 1930), affirmed by court *en banc,* 8 *N. J. Misc.* 704, where Justice Parker said, at *page 352* of 8 *N. J. Misc.:*

"It is suggested that 'the purpose of secrecy [of grand jury testimony] has been effected' and consequently the obligation has ceased from that time. I cannot agree that such purpose is fully effected when indictment is found. If at that juncture the grand jury proceedings are to be thrown wide open, the possible damage to the interests of the public by way of aiding the accused would be incalculable."

Unlike the situations in *United States v. Rose, supra,* and *United States v. Remington,* 191 *F.* 246 (2 *Cir.* 1951), also cited with approval by the majority, this is not a case where the defendant asks to examine *his own* grand jury testimony. In each of those cases, the defendant was indicted for perjury committed before the grand

jury; none of the quoted reasons for maintaining the secrecy of grand jury testimony were applicable. As the court in *Rose* said at 215 *F. 2d, page* 630:

"Since all the defendant desires is a transcript of his *own* testimony, the sanctity of that which transpired before the Grand Jury is hardly in question. In addition, such disclosure would not subvert any of the reasons traditionally given for the inviolability of Grand Jury proceedings."

This court's decision in *State v. Mucci,* 25 *N. J.* 423 (1957), does not support the view of the majority. There a copy of the grand jury testimony of the State's witnesses was given defendant *at the trial* for the purpose of cross-examination. The dissenting opinion in *Pittsburgh Plate Glass Co. v. United States, supra,* with which the majority apparently agrees, only recognized that access to the grand jury testimony should have been afforded the defendant *at the trial.* (See 3 *L. Ed., pp.* 1330–32.) In that case after the principal prosecuting witness testified on direct examination, defense counsel asked for the production of his relevant grand jury testimony. The trial court's denial of the request was affirmed by the majority of the court. Justice Brennan, speaking for the four dissenters, repeats the reasons for secrecy enumerated in *Rose.* He concluded that at that posture of the case none of the reasons were applicable. He said:

"Certainly disclosure at this stage of the proceedings would not enable the defendants * * * to tamper with the witness who has already testified against them on direct examination." [360 *U. S.* 393, 79 *S. Ct.* 1244.]

I have no quarrel with the views of Justice Brennan. When the reasons for cloaking grand jury testimony in secrecy have disappeared, the cloak should be lifted. As I have stated, such a disclosure of testimony might well be in order in the present case *at the trial* when the need for secrecy may disappear.

And, of course, *In re Presentment by Camden County Grand Jury*, 34 *N. J.* 378 (1961), cited by the majority, is inapplicable as there is no trial of an accused following a presentment by a grand jury without further grand jury action. And *State v. Donovan*, 129 *N. J. L.* 478 (*Sup. Ct.* 1943), also cited, in fact, lends weight to this dissent. There the court expressly stated the defendants were not entitled to ask for the details of the evidence given before the grand jury. 129 *N. J. L.,* at *p.* 483.

I would reverse. I am authorized to say that Justice HALL joins in this dissent.

HALL, J. (dissenting). I am in accord with the view expressed in the dissenting opinion of Justice PROCTOR that pretrial disclosure of the testimony of a witness before the grand jury is not permissible in this State on the bases of both precedent and policy with respect to grand jury secrecy. It may be added that the policy was deliberately established on the foundation of precedent, in 1948, when this court adopted what is now *R. R.* 3:3–7: "The requirements as to secrecy of proceedings of the grand jury shall remain as heretofore." In the context of this case, this would only permit discovery of the witness' testimony, at trial, for use in cross-examination of him (or, if a defendant were charged with false swearing before the grand jury, pretrial inspection of his own testimony before that body). As the comment to this rule in the *Tentative Draft* (1948), *p.* 38, states, the federal regulation (*Federal Rule of Criminal Procedure* 6(e), 18 *U. S. C. A.*) is more lenient. Even so, no federal case is cited which goes as far as the majority. If we are to change the policy, it should be done, not by going beyond the rule in a particular case as here, but by amending it after full review and reevaluation of the many considerations involved.

Moreover, to me, the underlying question here is really the broader and more significant one of the extent to which pretrial discovery should be allowed a criminal defendant.

The implications of the majority opinion seem far-reaching in two directions: first, the right to examine, in advance of trial, the testimony of any or all witnesses before the grand jury, which is the real issue in this case; and second, the cognate right to inspect statements of witnesses obtained by the prosecutor. While the latter issue is not directly presented, the rationale of the majority could well serve as a springboard when it is again urged.

Here, too, we are concerned with a rule, *R. R.* 3:5-11 quoted in the majority opinion, which declares policy and fixes limits and, again, ought not to be enlarged on an *ad hoc,* case by case, basis. This court so said as to this very rule in *State v. Johnson,* 28 *N. J.* 133, 143 (1958). Adopted in 1953 as our initial venture in this vexing field, it does not, in my opinion, authorize the discovery here permitted either in letter or spirit. The testimony of a witness is obviously not a tangible object or paper obtained from or belonging to the defendant or a statement or confession made by the defendant. And it can hardly be said to be within the intendment of "designated books, tangible objects, papers or documents obtained from others" when the rule expressly excepts from that classification "written statements or confessions." Calling the testimony "a view of the scene of the crime," as the majority does in seeking to analogize the situation to inspection of a physical object, seems to me a rather transparent disguise. The characterization cannot change the essential nature—it is still the grand jury testimony of a witness, which is not within the permissive scope of *R. R.* 3:5-11.

To probe deeper than the matter of rule limitations, this defendant expressly grounded his application on the broad proposition that, regardless of our rule, a defendant should be entitled to examine before trial the testimony of every grand jury witness in every case "to prepare his defense" and "to provide defendant an equal opportunity for a full and fair presentation of the available evidence which is now unilaterally available to the State." While the majority

230

directly deals only with a case of subornation of false swearing before the grand jury, the implications of its reasoning seem to me equally applicable to any other criminal situation so as to permit any defendant pretrial access to all grand jury testimony. Nor, under the rationale, do I perceive any solid basis for distinction between grand jury testimony of witnesses and statements given by them to the prosecutor.

The main thread inferentially running through the majority opinion is that the interests of justice require (to use the criterion of the rule) pretrial inspection of a witness' grand jury testimony whenever the defendant presents the possibility that some factual or legal defense might be developed from the testimony given. It is hard to imagine a case where a defendant could not make this broad showing. The majority, to me, indicates that such meets a defendant's obligation to demonstrate a "particularized need" and that the burden is thereby shifted to the State to demonstrate why the inspection should not be granted. While, of course, the decision does not explicitly go this far, the future trend in that direction seems foreshadowed. In addition, this view clearly appears to reverse what I have understood to be the proper approach in any criminal discovery matter where the legal discretion of the trial judge is involved.

It goes without saying that this concept of the majority as I view it would automatically expand criminal pretrial discovery in this State very greatly. Whether this result is desirable is a much mooted subject throughout the country, with many angles. For a comprehensive review of the numerous aspects, see Goldstein, "The State and The Accused: Balance of Advantage in Criminal Procedure," 69 *Yale L. J.* 1149 (1960). In *Johnson* (28 *N. J.*, at *p.* 143), this court said in effect that we would not go beyond *R. R.* 3:5–11 without fuller experience with its practical operation (including that of the implementing cases to that date) and without more information with

respect to experience in other jurisdictions where the practice is more liberal, to be thoroughly studied and explored at a judicial conference. No such study or exploration has been had. Without it, I am not willing to depart from the present limits of our law and start along the road the instant decision seems bound to take us. My personal reconsideration, necessarily a limited one, of the many-sided problems leads to the present conclusion that further enlargement of pretrial discovery is too fraught with the possibility of grave damage to the public interest in too many cases and not necessary for fair treatment of the criminal defendant in most situations. This seems especially true in those types of crimes closely affecting the public interest where law enforcement has not been effective, including governmental corruption, into which class the case at bar falls, and organized or gang lawlessness, in which it is common knowledge that trial perjury and intimidation of witnesses are at least prevalent.

Looking more specifically at this particular situation, even on some broad basis of "particularized need" and apart from the present rule I fail to see where this defendant makes a showing sufficient to warrant the exercise of a trial judge's discretion in his favor. The allegedly false testimony relied upon is set forth *verbatim* in the indictment. When questioned at oral argument, his counsel gave the impression that he wanted the inspection primarily to look for indications of retraction of the testimony and admission of its falsity by the witness later on in the same examination. This would not be enough to wash out the criminality of the witness, *State v. Kowalczyk, 3 N. J.* 51 (1949), and equally insufficient to absolve the defendant of subornation if it were proved that he corruptly procured the witness to so testify in the first instance. (At common law, subornation was a separate crime because it was considered a more serious offense than the perjury itself. *Perkins, Criminal Law* (1957), 393–395.) Even if the rule of *Kowalczyk* were otherwise, proof of defendant's

232

solicitation of the witness to testify falsely would warrant conviction under this indictment for attempted subornation. *Perkins, op. cit.,* 395.

I therefore vote to reverse that part of the order of the trial court which is appealed from.

*For affirmance*—Chief Justice WEINTRAUB, and Justices JACOBS, FRANCIS and SCHETTINO—4.

*For reversal*—Justices PROCTOR and HALL—2.