112 N.J. Super. 319 (1970)
271 A.2d 24
THE STATE OF NEW JERSEY
v.
CHARLES FISHER, ET AL., DEFENDANTS. THE STATE OF NEW JERSEY,
v.
GEORGE LAUDISI, ET AL., DEFENDANTS.
Superior Court of New Jersey, Law Division  Criminal.
Decided October 23, 1970.
Mr. Robert A. Coogan for defendants Fisher and Laudisi.
Mr. Thomas J. Smith, Jr., Assistant Prosecutor, for the State.
*320 McGANN, J.C.C. (temporarily assigned).
Similar motions were filed in each of the above matters. They were consolidated for argument and decided the same day as the argument, to avoid trial delays. Because defense counsel indicated that, if convicted, each defendant would appeal both the conviction and this pretrial decision, the court indicated that an opinion would be filed setting forth the reasons for the denials.
Defendant Fisher was indicted, along with four others, for armed robbery, breaking and entering with intent to rob, conspiracy to commit robbery, and conspiracy to break and enter with intent to rob. Pursuant to an appropriate discovery order defendant received a copy of the transcript of the grand jury minutes containing the testimony leading to his indictment. An investigating officer, one of the victims, a neighbor and a sixth conspirator, Henry C. Brandimarte, testified. The testimony of Brandimarte supplied the identification of the five defendants. There was also testimony from a State Police detective who coordinated the investigation. At the close of his testimony the following appeared:
MR. APPLEGATE: Thank you, Detective.
JUROR: Could I ask an off-the-record question?
MR. APPLEGATE: Off the record.
(Discussion off the record)
EXAMINATION BY THE GRAND JURY:
Q. Did they make any statement?
A. These other individuals? None of them are aware that this investigation has proceeded to the point other than Henry C. Brandimarte.
Q. What is he getting in consideration of this leniency as the State's witness?
A. Just the State's witness, from my understanding.
Q. Was there any identification from Mr. Saggese of any of the individuals?
A. No. He was shown photographs, that was Mr. Saggese, and Mr. Samuel Canneto; and they were unable to pick out any of the photographs of the individuals involved.
Q. They were all masked?
A. Yes.
Foreman: Any other questions?
Grand Jury: (No response).
*321 Laudisi was indicted along with three others, for receiving stolen goods and for conspiracy to steal the goods. The "off the record" discussion took place after the grand jury had heard testimony from the investigating officer. That testimony indicated that Laudisi had been arrested for shoplifting and that after his arrest the complicity of the other three appeared, leading to the charges against all four. When the investigating officer completed his testimony the following colloquy appears:
MR. KEUPER: Any question you want to ask the witness?
JUROR: This is conspiracy to commit a crime. It is not 
MR. KEUPER: Off the record.
(Discussion off the record.)
BY MR. KEUPER:
Q. There is a charge of theft against Laudisi?
A. Yes.
Q. Shoplifting. And the other is possession of stolen property.
MR. KEUPER: They can't prove they stole it.
JUROR: Isn't there a charge of theft there?
MR. KEUPER: No. No.
Q. What happened to the charge of shoplifting against Laudisi?
A. It was held over to go with the rest of these.
Q. Beg your pardon?
A. He was held over at the Preliminary Hearing. The Judge sent it up to the Grand Jury.
MR. KEUPER: You have no charge under the disorderly persons act. So you are only concerned  Do you have any other questions you want to ask the witness?
(No response)
MR. KEUPER: All right.
(Witness excused.)
In each case the defendant moved to obtain the "off the record" remarks before the grand jury. Fisher asserts that he is entitled to know, pretrial, what promises, if any, were given to Brandimarte in return for his testimony.
In Laudisi defendant is curious as to the subject matter of the "off the record" discussion, although he cannot point to any specific area in which that information might aid his defense.
*322 Assuming for the purpose of this opinion that there might be some competent procedure whereby the "off the record" discussions could be reproduced, and passing over the question as to whether defendants have demonstrated a "particularized need" for this information, Dennis v. United States, 384 U.S. 855, 86 S.Ct. 1840, 16 L.Ed.2d 973 (1966), the basic question is a policy one  should such discussions be disclosed to defendants? We determine that they should not.
Initially it should be clear that such information is not necessary for a motion directed to the sufficiency of the basis for the indictment. Based on what was before it  in the record  the grand jury either had probable cause to indict or it did not. State v. Ferrante, 111 N.J. Super. 299 (App. Div. 1970). Cf. State v. Chandler, 98 N.J. Super. 241 (Cty. Ct. 1967); State v. Costa, 109 N.J. Super. 243 (Law Div. 1970).
R. 3:6-7 sets forth the policy of this State that "except as otherwise provided by R. 3:13-3 and R. 3:17, the requirement as to secrecy of proceedings of the Grand Jury shall remain as heretofore, * * *."
R. 3:17 applies to grand jury minutes in a trial situation. R. 3:13-3 permits defendant to obtain copies of his own testimony before the grand jury as a matter of right, and to obtain copies of the grand jury testimony of co-defendants and other witnesses unless the State can show good cause to the contrary.
Secrecy of grand jury proceedings, "as heretofore," traditionally has been applied to the pre-indictment stage. The reasons for such secrecy, set forth in United States v. Rose, 215 F.2d 617, 628-629 (3 Cir.1954), and quoted with approval in State v. Clement, 40 N.J. 139, 143 (1963), are as follows:
(1) To prevent the escape of those whose indictment may be contemplated; (2) to insure the utmost freedom to the grand jury in its deliberations, and to prevent persons subject to indictment or their friends from importuning the grand jurors; (3) to prevent subornation *323 of perjury or tampering with the witnesses who may testify before grand jury and later appear at the trial of those indicted by it; (4) to encourage free and untrammeled disclosures by persons who have information with respect to the commission of crimes; (5) to protect innocent accused who is exonerated from disclosure of the fact that he has been under investigation, and from the expense of standing trial where there was no probability of guilt.
Once an indictment has been returned against a particular person the first reason no longer has logical validity; nor does the last clause of reason (2), and to prevent persons subject to indictment or their friends from importuning the grand jurors." Our Supreme Court has weighed the dangers of subornation of perjury and of discouraging prospective witnesses from freely testifying as to commission of crimes set forth in reasons (3) and (4), and found the desirability of disclosure to be an overriding policy consideration. R. 3:13-3(a)(3) and R. 3:13-3(c)(3); State v. Farmer, 48 N.J. 145 (1967). Reason (5) continues to be a valid basis for secrecy where an indictment is not returned and falls where the sufficiency of the basis for the indictment is challenged by the defendant. R. 3:10-2 and 3.
The question thus presented is whether the court should enlarge the present pretrial discovery rule to permit a defendant to inquire into the nature of "off the record" comments before a grand jury or, for that matter, "on the record" comments which are not the testimony of defendant, co-defendants or witnesses. The simple answer is that a trial court has no power to enlarge the rule. More basic than that, however, is a policy consideration. Public policy requires that the rule of discovery not be so enlarged.
Adverting to the second reason for secrecy set forth above, i.e., "to insure the utmost freedom to the grand jury in its deliberations," it remains as a matter of unshaken public policy. If the discussions of grand jurors among themselves or with the prosecutor (R. 3:6-6(a)) are to be exposed to the prying curiosity of a defendant, the freedom of deliberations of the grand jurors obviously would be inhibited. Grand jurors and the prosecutor are privy to many matters under *324 broad investigation which might come up in discussion as the result of a witness' testimony or of a grand juror's inquiry and yet not have an essential relationship to a particular indictment. Cf. in Re Essex County Grand Jury, 110 N.J. Super. 24, 32 (App. Div. 1970). The historic value of the grand jury system has been its freedom of inquiry  freedom from threats of violence or retribution, freedom from political pressures. State v. Smith, 102 N.J. Super. 325, 340 (Law Div. 1968); State v. Beck, 56 Wash.2d 474, 349 P.2d 587 (Wash. Sup. Ct. 1960), aff'd sub nom. Beck v. Washington, 369 U.S. 541, 82 S.Ct. 955, 8 L.Ed.2d 98 (1962); Pittsburgh Plate Glass Co. v. United States, 360 U.S. 395, 399, 79 S.Ct. 1237, 3 L.Ed.2d 1323 (1959).
So long as there is available to a defendant, the testimony of witnesses, himself and his co-defendants, he is in a position to test the adequacy of the indictment. Motive in seeking the indictment is not in issue. Therefore, comments of grand jurors or prosecutors are not and should not be available to him. State v. Borg, 8 N.J. Misc. 349 (Sup. Ct. 1930).
Defendants here argue that such "off the record" discussions are important to their evaluation of whether there was grand jury "misconduct" in returning the indictment. State v. Chandler, 98 N.J. Super. 241 (Cty. Ct. 1967); State v. Ferrante, 111 N.J. Super. 299 (App. Div. 1970). "Misconduct" bears only on the question of probable cause of lack of it, and for that one must look to the testimony which was heard. Assume a vindictiveness on the part of the prosecutor or grand jurors. Assume that an overzealous prosecutor was "out to get" a particular accused; assume he told a grand jury that they should indict, no matter what; assume the grand jurors are inflamed with public indignation  those considerations have no effect on the basic inquiry, which is whether, on the testimony before, it, the grand jury had probable cause to return the indictment it did. State v. Grundy, 136 N.J.L. 96, 99 (Sup. Ct. 1947); State v. Beck, supra, 349 P.2d at 389-392.
*325 Defendant argues the applicability of People v. Benin, 186 Misc. 548, 61 N.Y.S.2d 692 (Gen. Sess. 1946). In that case, prior to presenting witnesses to the grand jury, the district attorney admittedly had addressed the jurors for an hour concerning the case. By way of dictum the trial judge held such "off the record" colloquy to be improper and indicated that he considered it to be grounds for dismissal of the indictment. As indicated above, this court disagrees with that reasoning. See also State v. McFeeley, 136 N.J.L. 102, 111 (Sup. Ct. 1947); State v. Beck, supra. Annotation, 20 A.L.R.3d 98 (1968).
For the foregoing reasons the motions are denied.